# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 3, 2012

No. 12-30278
Summary Calendar

Lyle W. Cayce
Clerk

TILDEN HOLLIDAY,

Plaintiff–Appellant

v.

COMMONWEALTH BRANDS, INCORPORATED,

Defendant–Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-2785

Before REAVLEY, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Tilden Holliday appeals the district court's grant of summary judgment to Defendant–Appellee Commonwealth Brands, Inc. ("CBI") on his claim under the Age Discrimination in Employment Act ("ADEA"). Holliday claims that CBI terminated his employment because of his age and hired someone younger to replace him. The district court determined that even assuming Holliday had established a prima facie age discrimination claim, he

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30278

had not shown that CBI's purported reason for terminating him—his poor performance—was a pretext for unlawful discrimination.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In August 2001, CBI hired Holliday as a Key Account Manager, a position in CBI's sales team.  Holliday was 48 years old at the time.  His direct supervisor at CBI was Regional Manager Loren Trauth.  Trauth reported to Bob Miller, a Sales Director, who in turn reported to Gary Ebert, Vice President of Sales.  An interoffice memo from Miller to Ebert with a copy to Trauth in June 2003 cited Holliday's "very slow" progress and proposed reassigning him to be a Territory Manager.  The parties dispute whether this reassignment—which became effective June 30, 2003—was a demotion; Holliday maintains that it was not a demotion because his salary was not reduced, while CBI claims it was a demotion based on his poor performance as a Key Account Manager.  In any event, the parties agree that in April 2004, Holliday was promoted to a District Manager; his direct supervisor remained Trauth.  He maintained that position until he was terminated in April 2008.

CBI proffers evidence that it claims shows that Holliday had performance issues throughout his time at CBI.  In January 2003, Miller sent Holliday a letter criticizing him for having improperly reported his activities by indicating on a log that a client had canceled an appointment when in fact no appointment had ever been set.  The letter stated that if Holliday mislead Miller or Trauth in that way again it would "lead to further disciplinary action up to and including termination."  In May 2005, Trauth sent a memo to Holliday, with a copy to Miller, setting forth in writing guidelines for when and how Holliday was to have contact with the Territory Managers he supervised.  This memo was prompted by complaints by Territory Managers that Holliday had been contacting them for non-work-related reasons during business hours, at home, and on weekends.  In February 2006, Trauth sent a memo to Hoke Whitford, who was now

2

responsible for supervising Trauth and Holliday, explaining how Holliday had lied to her and Miller by claiming to have contacted another CBI District Manager as he had been instructed, when in fact he had not. The memo also stated that in May, October, and November 2005, Trauth had instructed Holliday to demonstrate leadership skills to earn the respect of the Territory Managers he supervised. In March 2006, Trauth sent a memo to Holliday informing him that, as previously discussed verbally and in writing, his performance had not been up to CBI's standards in multiple areas. The memo gave Holliday 30 days to make improvements in those areas, and stated that "failure to improve your job performance will result in further disciplinary action, up to and including termination of employment."

CBI performed annual performance appraisals of its District Managers, which were completed by the supervising Regional Manager, subject to the Sales Director's approval. The form used to evaluate District Managers rated a number of categories from one to five, with five as the highest score. Holliday's June 2006 annual review, completed by Trauth, awards Holliday threes in half the categories and twos and ones in all the others. Holliday's 2007 annual review awarded him threes in one-quarter of the categories, twos in more than half, and ones in the others.

According to Holliday, these negative reviews and other incidents were part of a plan developed by Trauth to get him fired and have him replaced with someone younger. This plan, Holliday maintains, is evident from a number of age-related comments Trauth made to Holliday and others beginning in early 2006. After Holliday had trouble with a computer program, for example, Trauth said to him: "Why can't you grasp this?"; "You don't understand"; You just don't understand this, do you?"; and "Well, maybe you need to retire." Holliday claims that Trauth referred to him and a Territory Manager as "you two old men" in late 2006, and described the Territory Manager to Holliday as "too old to grasp

the CBI hookup and too old to grasp to do a route list on his own. And it looks like he might be getting Alzheimer's." Holliday further alleges that Trauth told him he was "just getting too old for this job" twice, once after Holliday was unable to move a fully-stocked soda machine and again after he asked Trauth for a water break while "doing a reset," which he claimed was a "very strenuous" process. Finally, Trauth told Ray Ozmont, a Territory Manager supervised by Holliday, on more than one occasion that Holliday was an old man and too old for his job, and Trauth criticized Holliday's preparation of a report reviewing Ozmont's performance, saying that Holliday was "not grasping this. You're getting old."

In December 2007, Ozmont heard from a coworker that Trauth had promised Holliday's job to Mina Hernandez. Hernandez was a Territory Manager supervised by Holliday, and Holliday alleges that Trauth and Hernandez were very close. Also in December 2007, Hernandez submitted a three-page, type-written complaint to Whitworth, detailing a history of trouble getting along with Holliday, and claiming that Holliday had spread rumors that she and Trauth were romantically involved. Hernandez's complaint prompted a January 2008 letter from Whitworth to Holliday that listed five "items of concern": (1) Holliday's poor working relationship with Trauth; (2) Holliday's poor communication with the Territory Managers he supervised; (3) Holliday's unfair and inconsistent treatment of employees; (4) Holliday's discussion of personnel information about past employees; and (5) allegations that Holliday had made "personal sexual comments" about CBI employees. Whitworth met with Holliday to deliver the letter, and followed up with an email the next day outlining further issues with Holliday's job performance.

In March 2008, Whitworth received from Trauth another report that Holliday's job performance had not improved, that his communication with Trauth and his Territory Managers had not improved, that he was not effectively

training his Territory Managers, and that he had discussed confidential personnel information with one of his Territory Managers. In the middle of April 2008, Holliday received a negative interim performance review from Trauth. On April 21, 2008, Whitworth wrote a letter to Holliday detailing Holliday's lack of improvement on any of the "items of concern" outlined in Whitworth's January letter to Holliday. This April letter concluded: "It is my determination that [Human Resources Manager] Bonita McIntyre and myself terminate Mr. Holliday's employment on 4-28-08." Whitworth, McIntyre, and Russ Mancuso—the new Vice President of Sales—met with Holliday on April 28 to inform him that he was being terminated based on his failure to improve his job performance. CBI replaced Holliday with Ozment, who was 42 years old at the time he was promoted.

After receiving a right-to-sue letter from the Equal Employment Opportunity Commission, Holliday brought suit against CBI in the United States District Court for the Eastern District of Louisiana, alleging claims under the ADEA and Louisiana state law. The district court granted CBI's motion for summary judgment on all of Holliday's claims. Holliday timely appealed,[1] raising only his claim under the ADEA.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same legal standard as the district court. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439 (5th Cir. 2011). "A

---

[1] We disagree with CBI that Holliday's appeal should be summarily rejected due to his technically appealing from the district court's order denying Holliday's motion to alter or amend the summary judgment. Although Holliday did not comply with Federal Rule of Appellate Procedure 3(c), this court is lenient in interpreting notices of appeal, maintaining "a policy of liberal construction . . . where the intent to appeal an unmentioned or mislabeled ruling is apparent and there is no prejudice to the adverse party." *In re Blast Energy Servs., Inc.*, 593 F.3d 418, 424 n.3 (5th Cir. 2010) (internal quotation marks omitted). It is apparent from the briefing that Holliday intended to appeal the entire case and that CBI has not suffered prejudice.

No. 12-30278

summary judgment motion is properly granted only when, viewing the evidence in the light most favorable to the nonmoving party, the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Barker v. Halliburton Co.*, 645 F.3d 297, 299 (5th Cir. 2011).

## III.  DISCUSSION

Under the ADEA, "[i]t shall be unlawful for an employer to . . . discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  To prevail, a plaintiff may use direct or circumstantial evidence to prove that "age was the 'but-for' cause of the employer's" discharge decision.  *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 177 (2009).  Where, as here, a plaintiff provides no direct evidence of age discrimination, we apply the familiar *McDonnell Douglas* burden-shifting framework.  *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

Under that framework, a plaintiff must first establish a prima facie case that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).   The only element of Holliday's prima facie case disputed by CBI is that Holliday was qualified for the position.  Because "a plaintiff challenging his termination or demotion can ordinarily establish a prima facie case of age discrimination by showing that he continued to possess the necessary qualifications for his job at the time of the adverse action," *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1506 (5th Cir. 1988), and Holliday "had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered him unfit

6

for the position for which he was hired," *id.* at 1506 n.3, we determine that Holliday met his prima facie burden on this element.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for terminating the plaintiff. *See Moss*, 610 F.3d at 922. Holliday does not dispute that CBI has satisfied its burden; CBI maintains that it terminated Holliday because of "his persistent unsatisfactory performance."

Once an employer articulates a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to "rebut the employer's purported explanation, to show that the reason given is merely pretextual." *Id.* "A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Id.* (internal quotation marks omitted). "But a reason cannot be proved to be a 'pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Holliday's only evidence that age discrimination was the real reason for his termination are Trauth's comments. Holliday concedes that Trauth did not have actual authority over CBI's decision to terminate him, but relies on *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th Cir. 2003), in arguing that age-related remarks by someone other than the formal decision-maker are probative of the employer's discriminatory intent if that person is in a position to influence the decision. Assuming that this "cat's paw" theory of liability is available under the ADEA,[2] it is not appropriate here. Holliday has not offered

---

[2] Although we have recognized this "cat's paw" theory of liability under the ADEA, it is entirely unclear whether our decisions remain good law in the wake of *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), and *Staub v. Proctor Hospital*, 131 S. Ct. 1186 (2011). *Staub* recognized "cat's paw" liability under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"). 131 S. Ct. at 1194. In so holding, the Court construed

any evidence showing that Trauth had "influence or leverage" over Whitworth, McIntire, or Mancuso—the CBI employees who made the decision to terminate Holliday. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000). The record is unequivocal that Whitworth independently investigated any complaints about Holliday's performance and communicated directly with Holliday about improving his performance. Whitworth only determined that Holliday's employment should be terminated after Holliday failed to improve his performance in response to a letter from Whitworth. As Holliday has no evidence that Whitworth possessed any discriminatory motive, nor any evidence that Whitworth was influenced or leveraged by Trauth,[3] he has failed to sustain his burden of showing that CBI's purported reason for terminating him was pretextual. Thus, the district court appropriately granted CBI's motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of CBI is affirmed.

AFFIRMED.

---

the phrase "motivating factor in the employer's action," which is in the texts of USERRA and Title VII. *Id.* at 1190–91. That phrase is not, however, in the text of the ADEA, and specifically because the ADEA does not include that phrase, the Court in *Gross* held that plaintiffs could not proceed under a "mixed motive" theory in ADEA cases. *See* 557 U.S. at 174–78. Because the "motivating factor" phrase is not in the ADEA, and because the Court construed that phrase in recognizing "cat's paw" liability under USERRA, and finally, because the Court has focused closely on the text of the antidiscrmination statutes in authorizing theories of liability, it could very well be that our prior recognition of "cat's paw" liability under the ADEA was incorrect.

[3] Also unavailing is Holliday's attempt to show pretext by arguing that CBI could not have actually terminated him for poor performance because sales had increased during his tenure as District Manager. The record is clear that CBI's complaints about Holliday's performance were related to his unprofessional behavior and poor management, not his lack of sales acumen.