# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-20125

United States Court of Appeals
Fifth Circuit

**FILED**

August 19, 2015

Lyle W. Cayce
Clerk

CHRISTOPHER ZAMORA,

　　　　Plaintiff - Appellee Cross-Appellant

v.

CITY OF HOUSTON,

　　　　Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Texas

Before WIENER, CLEMENT, and SOUTHWICK, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Christopher Zamora ("Zamora"), a Houston police officer, sued the City of Houston (the "City") for unlawful retaliation under Title VII. A jury found the City liable and awarded Zamora damages, some of which the district court vacated. The City appealed, challenging the district court's refusals: to grant judgment as a matter of law for the City on Zamora's retaliation claim, to vacate the jury's past compensatory damages award, and to grant a mistrial or a new trial based on the jury's discovery of a prior jury's notes on the case. Zamora also appealed, challenging the district court's vacatur of the jury's future compensatory damages award. For the reasons that follow, we affirm in

No. 14-20125

part, and reverse and remand only the district court's vacatur of Zamora's future compensatory damages award.

## I.

In 2007, several members of the Houston Police Department (the "Department"), including Manuel Zamora ("Manuel"), sued the City for racial discrimination and retaliation. Zamora, Manuel's son and appellee/cross-appellant here, joined the lawsuit in September 2008. Initially, Zamora alleged only that the Department had retaliated against him in March 2008—because of his father's involvement in the lawsuit—by removing him from an assignment to the Department's prestigious Crime Reduction Unit ("CRU").

During discovery, Zamora deposed several of his CRU supervisors. Following those depositions, Manuel filed a complaint with the Department's Internal Affairs Division, alleging that the deponents violated the Department's policies by lying under oath and by colluding to gin up pretext for Zamora's removal from the CRU.

As part of Internal Affairs' investigation into Manuel's complaint, Zamora was questioned on the specifics of his allegations of discrimination, harassment, and retaliation. After interviewing his CRU supervisors and nearly two dozen other officers, Internal Affairs determined that Zamora, not his CRU supervisors, had violated the Department's policies by being untruthful in his responses during the investigation. That determination was largely based on statements made by Zamora's CRU supervisors that harshly attacked his credibility and baldly contradicted his factual assertions. A departmental disciplinary committee recommended that Zamora be suspended for ten days, and the Chief of Police approved the suspension.

While the Internal Affairs investigation was progressing, the district court dismissed Zamora's retaliation claim (and all other pending claims) on summary judgment, reasoning that Zamora could not complain of retaliation

for his father's protected activity. But after the Supreme Court held in *Thompson v. North American Stainless, LP*, 131 S. Ct. 863 (2011), that a plaintiff could base a retaliation claim on the protected activity of a close family member, this court reversed the district court's dismissal of Zamora's retaliation claim. *Zamora v. City of Houston*, 425 F. App'x 314, 316-17 (5th Cir. 2011) (per curiam).

In addition to appealing the district court's summary judgment ruling, Zamora appealed his suspension internally to an independent arbitrator. Just before this court reversed the district court's summary judgment ruling, the arbitrator overturned Zamora's suspension on the merits.

On remand, Zamora filed an amended complaint setting out additional allegations of retaliatory actions taken by the Department since he joined the lawsuit in September 2008. Relevant here, Zamora—pointing to his suspension's reversal—claimed that his ten-day suspension was retaliatory.[1]

This time, the district court denied the City's summary judgment motion, and the case proceeded to trial. But after the jury reached a verdict, the Supreme Court decided *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), clarifying the standard for proving retaliation under Title VII. The district court thus ordered a new trial.

During deliberations following the second trial, the jury discovered a chalkboard with jury notes from the first trial. Those notes appeared to indicate that ten jurors on the first jury believed that Zamora's suspension was retaliatory. After questioning each juror in open court, the district court denied the City's motion for a mistrial, and later denied the City's motion for a new trial.

---

[1] Zamora also claimed that he would have received a particular transfer he desired had he not engaged in protected activity. After the jury deadlocked on that claim, he abandoned it, and it is not at issue in this appeal.

No. 14-20125

The jury found that the City suspended Zamora in retaliation for his protected activity, and awarded him $23,000 in past compensatory damages and $127,000 in future compensatory damages. The City then moved for judgment as a matter of law and for a new trial or remittitur. The district court denied the City's motion on liability, but vacated the jury's award of future compensatory damages as not supported by the evidence.

This appeal followed.

## II.

"Although we review the denial of a motion for judgment as a matter of law *de novo*, we apply the same legal standard as the district court." *EEOC v. Boh Bros. Constr. Co.*, 731 F.3d 444, 451 (5th Cir. 2013) (en banc). To obtain judgment as a matter of law, "the facts and inferences [must] point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id.* (quoting *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 498 (5th Cir. 2012)) (internal quotation marks omitted). We "must draw all reasonable inferences in the light most favorable to the verdict." *Id.* at 452. And we "'cannot reverse a denial of a motion for judgment as a matter of law unless the jury's factual findings are not supported by substantial evidence, or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings.'" *Id.* (quoting *Am. Home Assurance Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004)).

We review a decision to grant or deny a mistrial for abuse of discretion. *United States v. Ruggiero*, 56 F.3d 647, 652-53 (5th Cir. 1995) (refusals to grant new trial following allegations of jury influence are reviewed for abuse of discretion).

4

No. 14-20125

III.

A.

The City first argues that Zamora, who used a cat's paw theory of causation in proving his retaliation claim, has not established that cat's paw analysis is still viable following *Nassar*.

A Title VII retaliation plaintiff must establish that: "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between that protected activity and the adverse employment action." *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 394 (5th Cir. 2000). *Nassar* and cat's paw analysis both bear on the third element, causation.

A plaintiff asserting a Title VII *discrimination* claim must show only that the employer's discriminatory motive "was a motivating factor" for an adverse employment action. *Nassar*, 133 S. Ct. at 2526. In *Nassar*, the Supreme Court clarified that a plaintiff asserting a Title VII *retaliation* claim must meet a higher standard of causation. Such a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534.

Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action— harbored any retaliatory animus. Under this theory, a plaintiff must establish that the person with a retaliatory motive somehow influenced the decisionmaker to take the retaliatory action. Put another way, a plaintiff must show that the person with retaliatory animus used the decisionmaker to bring about the intended retaliatory action.

This court has expressed uncertainty about the continued viability of cat's paw analysis in a similar context, albeit in a nonprecedential opinion. In *Holliday v. Commonwealth Brands, Inc.*, 483 F. App'x 917 (5th Cir. 2012) (per

curiam), the panel considered, without deciding, whether cat's paw analysis should apply when plaintiffs must meet the heighted but-for standard of causation (there, in an ADEA case). *See id.* at 922 n.2. *But see EEOC v. DynMcDermott Petrol. Operations Co.*, 537 F. App'x 437, 443-45 (5th Cir. 2013) (per curiam) (using cat's paw analysis to assess evidence of but-for causation in ADEA case).

But we have not squarely decided that question, either in the broader context of claims that require plaintiffs to show but-for causation or in the narrower context of Title VII retaliation claims following *Nassar*.[2] At least three other circuits have concluded that, even after *Nassar*, plaintiffs may use a cat's paw theory of causation in Title VII retaliation cases. *See, e.g., EEOC v. New Breed Logistics*, 783 F.3d 1057, 1070 (6th Cir. 2015); *Ward v. Jewell*, 772 F.3d 1199, 1203, 1205 (10th Cir. 2014); *Bennett v. Riceland Foods, Inc.*, 721 F.3d 546, 551 (8th Cir. 2013); *see also Godwin v. Wellstar Health Sys., Inc.*, No. 14-11637, 2015 WL 3757354, at *11 (11th Cir. June 17, 2015) (using cat's paw analysis in ADEA case requiring but-for causation).

Read together, *Nassar* and *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), make clear that cat's paw analysis remains viable in the but-for causation context. In *Staub*, the Court explicitly blessed the use of cat's paw analysis in the context of an employment claim requiring that the unlawful animus be a "motivating factor" for the employer's action (there, a USERRA claim). *Id.* at 416-17, 419-22. The Court held that "if a supervisor performs an

---

[2] In *Haire v. Board of Supervisors of Louisiana State University Agricultural & Mechanical College*, 719 F.3d 356 (5th Cir. 2013), this court arguably relied on cat's paw analysis in holding that a Title VII retaliation plaintiff had raised a genuine issue of material fact on causation. *See id.* at 366-69. But the court did not grapple with the issue whether cat's paw analysis remains viable in the retaliation context, and it is unclear from the opinion whether the court relied only on cat's paw evidence in finding that the plaintiff had produced enough evidence to create a genuine issue of fact.

act motivated by [unlawful] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable." *Id.* at 422 (footnote omitted). Meanwhile, in *Nassar*, the Court changed only the strength of the causal link—between the supervisor's actions and the adverse employment action—that the plaintiff must establish. *Cf. Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 949-50 (10th Cir. 2011) (applying *Staub* to ADEA case, which requires proof of but-for causation, and noting that to establish cat's paw causation in such a case, "the relationship between a subordinate's animus and the ultimate employment decision must be more closely linked" than in "motivating factor" cases). In other words, the applicable standard of causation is relevant only to the latter portion of this *Staub* test—instead of being a proximate cause, the supervisor's act must be a "[but-for] cause of the ultimate employment action." 562 U.S. at 422; *see also Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427-29 (6th Cir. 2014) (similarly replacing "motivating factor" with "but-for" in applying cat's paw analysis post-*Nassar*). *Nassar* says nothing about whether a supervisor's unlawful animus may be imputed to the decisionmaker; it simply requires that the supervisor's influence with the decisionmaker be strong enough to actually cause the adverse employment action.

The Court's reasoning in *Staub* also supports this reading. There, the Court explained that refusing to allow cat's paw analysis would undercut a law designed to prevent employment discrimination. 562 U.S. at 420. An employer could insulate itself from liability by isolating the decisionmaker from an employee's supervisors. *Id.* Supervisors could then attempt to cause adverse action through conduct motivated by unlawful animus—for example, by filing

No. 14-20125

dismal but untrue performance reviews. *Id.*[3] This concern is even stronger in cases where supervisors have sufficient influence over the decisionmaker that they can *in fact* cause an adverse employment action—in other words, in but-for cases. And "[s]ince a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it." *Id.* at 421. If the supervisor is motivated by retaliatory animus, then the employer has violated Title VII. *Cf. id.* In short, *Staub* supports using a cat's paw theory of causation in but-for cases, and nothing in *Nassar* is to the contrary.

We now join the circuits that have addressed the question and hold that, in the context of Title VII retaliation claims, cat's paw analysis remains a viable theory of causation.[4]

B.

The City's core argument on appeal is that Zamora did not produce sufficient evidence from which a reasonable jury could find a causal connection between his protected activity and his ten-day suspension. Zamora responds that he produced evidence that his CRU supervisors made retaliatory statements to Internal Affairs, intending to cause Zamora to suffer an adverse employment action, and that they succeeded.

"[I]n a case such as this one when there has been a trial on the merits, we need not address the sufficiency of the prima facie case, but instead we will proceed to the ultimate question of whether the plaintiff presented enough evidence for a jury to find that [retaliation] occurred." *Thomas*, 220 F.3d at 393. In other words, we need not analyze this case under the familiar *McDonnell Douglas* burden-shifting framework. *Id.*

---

[3] Indeed, that is similar to what Zamora alleges here.

[4] Although the same rationale for the cat's paw theory's continued viability in the retaliation context might be extended to other claims requiring but-for causation, such as ADEA claims, the broader issue is not before us.

No. 14-20125

Under *Staub* and *Nassar*, to establish causation under a cat's paw theory, Zamora must produce sufficient evidence that (1) his CRU supervisors, motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of his suspension. We address each element in turn.

i.

The City argues that Zamora "produced no evidence of retaliatory motive on the part of [his CRU supervisors]" and no evidence that, motivated by retaliatory animus, they took actions intended to cause an adverse employment action. The record suggests otherwise.

To begin with, at the time that Zamora's CRU supervisors submitted their statements to Internal Affairs, each was well aware that Zamora had joined Manuel's discrimination suit. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 883 (5th Cir. 2003) (explaining that "to establish the causation prong of a retaliation claim, the employee should demonstrate that the employer knew about the employee's protected activity"). Indeed, most of them had recently been deposed for that suit. Manuel's allegations of misconduct in his Internal Affairs complaint chiefly related to those depositions. And each of the CRU supervisors received and responded to the Internal Affairs complaint.

Zamora also presented evidence that his CRU supervisors' awareness of his protected activity was particularly likely to cause retaliatory animus. Zamora's expert testified that the Department operated under a "code of silence" in which officers would retaliate against those who complained, spoke out against others, or filed complaints or lawsuits. The jury was entitled to credit this testimony. *See Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). The jury could reasonably infer that the CRU supervisors, operating under this "code of silence," retaliated against Zamora, who they were well aware had engaged in protected activity. For the same reason, the jury could

also reasonably infer that they retaliated against Zamora because his father had filed an Internal Affairs complaint against them. Moreover, Zamora's protected activity had caused the CRU supervisors to sit through depositions just before they made their statements.

When considered with the highly negative statements themselves—which severely attack Zamora's credibility and reputation—a reasonable jury easily could have found that the CRU supervisors were motivated by retaliatory animus and that their statements were intended to cause Zamora to suffer an adverse employment action.

ii.

The City argues that even if Zamora's CRU supervisors were motivated by retaliatory animus, their statements were not a but-for cause of Zamora's suspension. Substantial record evidence, however, shows that they were.

Zamora's suspension did not result from an Internal Affairs investigation of allegations of misconduct against him. Instead, it resulted from an investigation prompted by Manuel's complaint that certain of Zamora's CRU supervisors had violated departmental policies, including the prohibition on truthfulness. That the investigation of Zamora's CRU supervisors resulted in a recommendation to instead punish *Zamora* for untruthfulness was in large part due to his supervisors' retaliatory statements.

Lieutenant Spjut reviewed the Internal Affairs report and recommended that Zamora be disciplined. In his recommendations, he heavily relied on the CRU supervisors' retaliatory statements. Indeed, in two of the three incidents for which Spjut recommended discipline, the CRU supervisors provided the purportedly contradictory evidence. Spjut also repeatedly credited the testimony of other officers over Zamora's in finding that Zamora lied, including in the only instance for which the CRU supervisors did not provide the contradicting statements. An inference that he did so because of the CRU

supervisors' harsh attacks on Zamora's credibility would be reasonable. The City did not, moreover, produce an example of untruthfulness for which Zamora would have been punished absent the CRU supervisors' statements.

Spjut had no personal involvement in or knowledge of Zamora's work performance. Instead, he relied on the statements made by those interviewed. Similarly, the departmental disciplinary committee did not perform an independent investigation; it simply reviewed the Internal Affairs file and Spjut's recommendations. Likewise with the Chief of Police's designee.

In short, the CRU supervisors managed, with their retaliatory statements, to turn an investigation of purported wrongdoing by them into a recommendation that one of their accusers be disciplined. Without their statements against Zamora, Spjut would not have recommended discipline; the departmental disciplinary committee would not have adopted Spjut's recommendation; and the Chief of Police would not have had any recommendation to approve. Clearly, Zamora was disciplined because of the CRU supervisors' retaliatory statements.

The City counters that the many layers of review between the CRU supervisors' statements and the ultimate decisionmaker necessarily broke the chain of causation. Not so. Neither Spjut nor anyone above Spjut conducted an investigation that "result[ed] in an adverse action for reasons unrelated to the [CRU] supervisor[s'] original biased action[s]"—the retaliatory statements. *Staub*, 562 U.S. at 421. In *Staub*, the Supreme Court noted that if an independent investigation "takes [a supervisor's biased report] into account without determining that the adverse action was, apart from the supervisor's recommendation, entirely justified," the supervisor's action "may remain a

causal factor." *Id.*[5] Spjut's investigation did not merely take the CRU supervisors' statements into account; he based his disciplinary recommendations on them. And without the supervisors' statements, the adverse action would not have been justified.

The City next argues that Zamora's 2010 suspension is too remote from his joining of Manuel's lawsuit in 2008. Courts have found that to establish a prima facie case, plaintiffs may rely solely on temporal proximity between protected activity and an adverse employment action only if the two are very close. *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001). Our inquiry here, however, is not whether temporal proximity alone shows causation—Zamora has produced other evidence of causation—nor is it whether Zamora has established a prima facie case. Also, joining Zamora's father's lawsuit was not his only protected activity. His statement to Internal Affairs during the investigation, alleging retaliation, harassment, and other misconduct, was circulated to his CRU supervisors; the jury could have found that the CRU supervisors were retaliating against Zamora for that protected activity—which took place close in time to the retaliatory statements—as well.

Next, the City contends that because the ultimate decisionmakers reasonably believed that Zamora had violated departmental policies, the decision to suspend Zamora was "based on a non-retaliatory reason." This argument misunderstands cat's paw analysis. In *every* case involving a cat's paw theory of causation, the ultimate decisionmaker bases his decision on a non-retaliatory reason. Indeed, that is why cat's paw analysis is needed:  The plaintiff cannot show that the decisionmaker harbored any retaliatory animus. But because the supervisors caused that decision through actions motivated by

---

[5] *Staub*, of course, was a USERRA case, involving the "motivating factor" standard of causation. But it is instructive on this point because it suggests that even investigations that merely take into account a biased report do not break the causal chain.

retaliatory animus—in effect manipulating the decisionmaker into taking what appears to the decisionmaker to be a non-retaliatory action—the employer is liable. *See Staub*, 562 U.S. at 419-22. That is precisely what occurred here.

Because Zamora produced sufficient evidence to show that his CRU supervisors, motivated by retaliatory intent, intended to cause and did cause his suspension, the district court properly denied the City's motion for judgment as a matter of law on this issue.

## IV.

### A.

At trial, Zamora sought past compensatory damages for mental anguish, emotional distress, and damage to his reputation. The jury awarded Zamora $23,000 in past compensatory damages. The City challenges the sufficiency of the evidence supporting that award.

"Compensatory damages are reviewed for abuse of discretion." *DeCorte v. Jordan*, 497 F.3d 433, 442 (5th Cir. 2007). Zamora must show how he was "personally affected by the [retaliatory] conduct and the nature and extent of the harm." *Id*. Although in many cases a claimant's testimony alone will not suffice, "corroborating testimony and medical evidence is *not* required in *every* case involving compensatory damages." *Id*.

Manuel testified as to the mental anguish and depression that Zamora suffered between his suspension and the arbitrator's reversal of the suspension. In addition, Zamora, Manuel, Zamora's expert, and several of his supervisors testified either that Zamora's reputation was harmed after he was branded untruthful or that in general, officers found to be liars suffer severe reputational harm within police departments. Zamora thus produced specific evidence that the retaliation caused him to suffer both mental anguish and reputational harm sufficient to support the jury's award.

No. 14-20125

B.

The jury also awarded Zamora $127,000 in compensatory damages for future mental anguish and reputational harm. The district court granted the City's motion for judgment as a matter of law and vacated this award, finding it to be unsupported by the evidence. Zamora appeals, but he argues only that he presented sufficient evidence of future reputational harm; he has abandoned his argument that the award was based on a sufficient showing of future mental anguish.

This court "review[s] the district court's grant of a motion for judgment as a matter of law *de novo.*" *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1042 (5th Cir. 1998).

Zamora argues that two "executive assistant chiefs" in the Department—high-ranking officers who report directly to the Chief of Police—disagreed with the arbitrator's decision to overturn Zamora's citation and resulting suspension. One, Munden, stated explicitly that he still thought Zamora was untruthful. The district court stated that it was "unpersuaded that these individuals' personal opinions support compensable injury from unlawful retaliation" because Zamora had not "adduce[d] proof indicating that any of these individuals' (or others') views are likely to impact his career in the future." But the jury was entitled to make the natural and common-sense inference that an employee suffering from a blackened reputation in the eyes of high-ranking executives of an organization is limited in his potential to rise within that organization. And although Zamora received a scheduled promotion to sergeant, the jury was entitled to believe that his chances of

14

further promotion—or transfer from a patrol unit to a more prestigious investigative unit—would be affected by his poor reputation.[6]

The City counters that since 2010, Zamora has consistently received positive performance reviews from his new supervisors; he has been selected for illustrious training programs; he has received commendations; he has enjoyed successful working relationships with his peers; and he has received a scheduled promotion. That he is currently doing well within his new unit, however, does not mean that his future is not limited by the harm to his reputation.

Indeed, Zamora produced expert testimony about the importance of truthfulness in the law enforcement community, and about the devastating effect that even an overturned finding of untruthfulness can have. The expert, Mel Tucker, testified that "untruthfulness is one of the worst [complaints], because that's a bell, if you will, that can't be un-rung." Tucker noted that, if he were to evaluate applicants for a position, he would choose one without an untruthfulness allegation over one who had one, *even if* the allegation had been overturned, "because that's less baggage that I have to deal with with that employee." Other parts of Tucker's testimony dealt with the culture of police departments, and how whistleblowers who break the "code of silence" are viewed as turncoats. The jury was entitled to consider what Tucker told them about police department culture and draw their own conclusions about the extent that Zamora's "baggage" would continue to injure him in the future.

---

[6] Zamora was asked at trial whether he believed that he would "ever be able to promote, or transfer rather, as a sergeant from patrol into some type of investigative sergeant's position," and he responded, "[n]o, I don't think so." In its briefing in the district court, the City claimed that despite their "personal opinions," "Munden and Dirden have an obligation to follow not only the law and city policy, but also to accept the consequences of 'bargained for' arbitration processes." But the jury was not required to believe that the HPD would follow its own policies.

No. 14-20125

In sum, given the deference owed to the jury verdict and the evidence Zamora presented at trial, the district court erred in vacating the portion of the jury's award attributable to future reputational harm. Yet, although we conclude that Zamora presented sufficient evidence to support an award of *some* amount of damages for future reputational harm, the jury's award did not specify how much of the award was attributable to emotional distress and how much was attributable to reputational harm. On remand, the district court should consider remittitur to determine the amount of damages to which Zamora is entitled for reputational harm only.

V.

The City argues that the district court erred in denying the City's motion for a mistrial after the jury discovered the previous jury's notes on a chalkboard in the jury room. The district court denied the City's motion after making a factual finding that none of the jurors were tainted by viewing those notes.

"The decision to declare a mistrial is left to the sound discretion of the judge," and granting a mistrial "is appropriate when there is a high degree of necessity." *Renico v. Lett*, 559 U.S. 766, 774 (2010) (internal quotation marks omitted). When it comes to influences on the jury, whether extrinsic or intrinsic, "the trial court has broad discretion and the ultimate inquiry is: 'Did the intrusion affect the jury's deliberations and thereby its verdict?'" *United States v. Sotelo*, 97 F.3d 782, 797 (5th Cir. 1996) (quoting *United States v. Ramos*, 71 F.3d 1150, 1154 (5th Cir. 1995)). This court, moreover, "should accord great weight to the trial court's finding that the evidence in no way interfered with any juror's decision." *United States v. O'Keefe*, 722 F.2d 1175, 1179 (5th Cir. 1983). After all, "the trial judge is in the best position to evaluate accurately the potential impact of the complained-of . . . influence." *Ramos*, 71 F.3d at 1154.

16

Here, the district court interviewed each of the jurors individually in open court. The district court noted that, upon discovering the notes and "deduc[ing] that that material was related to some proceeding in this case . . . [the jury] in good faith . . . stopped reading." The notes, moreover, did not contain evidence; they appear to have indicated only the first jury's positive view of Zamora's retaliation claim. Following the juror interviews, the district court found that none of the jurors would "be influenced by anything they have seen on that board."

The district court did not abuse its broad discretion in assessing whether the jury would be influenced by viewing the previous jury's notes. The view that the district court reached after its prompt and thorough investigation, and the district court's admonishment to the jury not to consider the notes, indicates that the notes did not affect the jury's deliberations and thereby its verdict.

## VI.

For the foregoing reasons, we AFFIRM the district court's judgment on liability because Zamora produced evidence sufficient to find—under *Nassar*'s but-for standard of causation—that his CRU supervisors, motivated by retaliatory intent, intended to cause and did cause his suspension. We AFFIRM the district court's order upholding the jury's past compensatory damages award because Zamora produced specific evidence that he suffered mental anguish and reputational harm until his suspension was overturned. We REVERSE and REMAND the district court's order vacating the jury's future compensatory damages award because Zamora produced sufficient evidence to support his claim of future reputational harm, and instruct the district court on remand to consider remittitur. And we AFFIRM the district court's order denying the City's motion for a mistrial because the district court

No. 14-20125

found after a thorough investigation that the discovery of the prior jury's notes would not affect the jury's deliberations or the jury's verdict.