# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 29, 2015

Lyle W. Cayce
Clerk

No. 14-60917
Summary Calendar

DR. SHU-HUI WU,

      Plaintiff – Appellant

v.

MISSISSIPPI STATE UNIVERSITY,

      Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Mississippi
U.S.D.C. No. 1:13-CV-2

Before REAVLEY, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Dr. Shu-Hui Wu appeals the district court's grant of summary judgment in favor of Mississippi State University ("MSU") on Wu's claim that MSU retaliated against her by withholding a promotion and providing a minimal raise. Wu also appeals the district court's exclusion of the testimony of Wu's expert witness, Dr. Saranna Thornton. For the reasons that follow, we AFFIRM the district court in all respects.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-60917

## I. Background

Wu has been a history professor at MSU since 1999 and an associate professor since 2004. Beginning in February 2011, Wu filed three complaints with the EEOC alleging discrimination based on race, national origin, and age, as well as retaliation claims. The first charge, filed in February 2011, alleged that Wu was paid less than other professors. The second charge, filed in August 2011, alleged that she had received a lower raise than other professors in retaliation for her first charge. After the second charge, Wu applied for, but did not receive, a promotion to full professor. She subsequently filed the third charge in July 2012 alleging that MSU denied her promotion to full professor in retaliation for the first two charges. Wu received a promotion to full professor in 2014.

Wu sued MSU in December 2012 under Title VII, asserting claims for discrimination and retaliation based on MSU's failure to promote her to full professor and to raise her salary commensurate with the raises received by other professors. MSU moved for summary judgment. The district court granted MSU's motion as to Wu's retaliation claims but denied it as to her discrimination claims; the district court also granted MSU's motion to exclude a report from Wu's expert witness, Dr. Thornton, an economics professor at Hampden-Sydney College in Virginia.

The parties proceeded to trial on the discrimination claim, which resulted in a jury verdict for MSU. Wu timely appealed the district court's judgment, specifically challenging its grant of summary judgment on Wu's retaliation claim and the exclusion of the expert witness testimony.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. *Mesa v. Prejean*, 543 F.3d 264, 269 (5th Cir. 2008). Summary judgment is

No. 14-60917

appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A disputed fact is material if it has the potential to affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Doubts are resolved in favor of the nonmoving party, and any reasonable inferences are drawn in favor of the nonmoving party. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). We may affirm the district court's grant of summary judgment on any ground supported by the record and presented to the district court. *Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

We review the decision to exclude an expert witness for abuse of discretion. *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 535 (5th Cir. 2013). "A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 351 (5th Cir. 2007) (citation omitted). If we "find[] an abuse of discretion in admitting or excluding evidence, we review the error under the harmless error doctrine, affirming the judgment, unless the ruling affected substantial rights of the complaining party." *Id.* (citation omitted).

### III. Discussion

#### A. Summary Judgment on Wu's Retaliation Claims

To establish a prima facie case of retaliation, Wu must show that (1) she participated in a Title VII protected activity, (2) she suffered an adverse employment action by her employer, and (3) there is a causal connection between the protected activity and the adverse action. *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 331 (5th Cir. 2009). This causal connection requires "but-for causation," i.e., proof that the retaliation would not have occurred

without the employer's allegedly wrongful actions. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). If Wu makes this showing, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996); *see also McDonell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).

### 1. Denial of Promotion to Full Professor

First, Wu claims that MSU retaliated against her by denying her promotion to full professor. The parties do not dispute that Wu participated in a protected activity when she filed her EEOC complaints or that the denial of her promotion was an adverse employment action. Instead, the dispute focuses on whether Wu has presented sufficient evidence to raise a genuine issue of material fact regarding whether the denial of the promotion can be causally linked to her EEOC complaints. *See Stewart*, 586 F.3d at 331.

Wu does not contend that all of the numerous decisionmakers involved in the promotion process "harbored . . . retaliatory animus" against her. *See Zamora v. City of Houston*, ___ F.3d ___, No. 14-20125, 2015 WL 4939633, at *3 (5th Cir. Aug. 19, 2015). Instead, she argues only that Dr. Alan Marcus, the head of the history department since 2005, had a retaliatory motive. Therefore, Wu asserts a "cat's paw" theory of liability, meaning that she must show Marcus "somehow influenced the decisionmaker[s] to take the retaliatory action" or used the decisionmakers to retaliate.[1] *Id.* "[T]o establish causation under a cat's paw theory, [Wu] must produce sufficient evidence that (1) [her]

---

[1] Though there was some question regarding the "continued viability of cat's paw analysis" in light of the Supreme Court's decision in *Nassar*, we recently held that "cat's paw analysis remains a viable theory of causation" for retaliation claims. *Zamora*, 2015 WL 4939633, at *3, *5.

No. 14-60917

supervisor[], motivated by retaliatory animus, took acts intended to cause an adverse employment action; and (2) those acts were a but-for cause of" the adverse employment action. *Id.* at *5.

Wu has failed to produce sufficient summary evidence that Marcus was motivated by retaliatory animus. Wu contends that Marcus retaliated against her for filing EEOC complaints by writing a negative review of her performance as part of her full professor application.[2] However, this negative review was not a change in attitude by Marcus following the filing of the EEOC complaint. Instead, Marcus regarded and reviewed Wu negatively long before she filed her EEOC complaints. Marcus had previously warned Wu that she was in danger of not being promoted to full professor. Furthermore, many of the criticisms within Marcus's negative review are the same as those aired in his annual reviews of Wu that predate her EEOC complaints. The substantial similarities between Marcus's prior annual reviews and the negative review recommending against Wu's promotion negate a retaliatory motive for his negative assessment. As a result, Wu has failed to produce sufficient evidence that Marcus acted with retaliatory animus. *See id.*

Even if Wu could show that Marcus had a retaliatory motive, Wu has also failed to produce sufficient summary judgment evidence to raise a fact issue about whether Marcus's actions were the but-for cause of her denial of promotion to full professor. We have noted that "collective decision-making is less susceptible to influence by an individual with a retaliatory motive." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 806 n.2 (5th Cir. 2007).

---

[2] Wu also contends that Marcus engaged in retaliatory conduct by failing to ensure that her promotion application had the requisite four external review letters. However, the evidence indicates that Marcus was not the individual primarily responsible for obtaining these external review letters.

Likewise, the decision at MSU whether to promote an associate professor to full professor involves many individuals with multiple levels of review. At each level, the relevant decisionmakers recommended against Wu's promotion.[3] At least some of the decisionmakers involved in denying Wu's application testified that Marcus's negative review was not a significant factor in their decision to deny Wu's promotion application. For example, the dean testified that he independently came to some of the same conclusions about Wu's publication record that were aired in Marcus's negative review. Another decisionmaker, a member of the college committee, testified that he found Marcus's review "unhelpful" and that he did not give it much weight when evaluating Wu's application. In other words, Wu failed to produce sufficient evidence to raise a fact question about whether Marcus's actions, even if motivated by retaliatory animus, were the but-for cause of Wu's denied promotion application. As Wu has thus failed to meet her summary judgment burden on her prima facie case of retaliation as it relates to her denial of promotion to full professor, it was not error for the district court to grant summary judgment on this ground. *See Zamora*, 2015 WL 4939633, at \*5.

### 2. Merit-based Pay Raise

Wu also argues that MSU retaliated against her by giving her a minimal raise of 1.5% within thirty days of her filing the third EEOC charge. As in the promotion context, the parties do not dispute that Wu's EEOC filing is a protected activity and that receiving an allegedly unfairly low pay raise is an

---

[3] First, the department promotion-and-tenure committee and the department head, Marcus, recommended against promotion. Then, both the dean and the college-wide promotion-and-tenure committee recommended against promotion. The application proceeded to the provost, who also recommended against promotion. The president adopted the provost's recommendation and denied Wu's application. Finally, Wu appealed to the university committee, which affirmed the president's decision.

adverse employment action.  Thus, the dispute focuses on whether Wu has presented sufficient evidence to raise a genuine issue of material fact regarding whether the allegedly low raise can be causally linked to her third EEOC complaint.  *See Stewart*, 586 F.3d at 331.  Though temporal proximity between the protected activity and the adverse employment action can support a finding of causation, "temporal proximity alone is insufficient to prove but[-]for causation." *Strong*, 482 F.3d at 808.  Wu asserts that the temporal proximity between the filing of her third EEOC complaint as well as Marcus's alleged failure to follow MSU procedure in calculating her pay raise constitutes sufficient evidence to satisfy the but-for causation requirement needed to show retaliatory conduct.  *See Nassar*, 133 S. Ct. at 2533.

Wu has failed to provide sufficient evidence that Marcus failed to follow MSU procedure in calculating her pay raise.  Departmental procedure dictated that merit-based pay increases should be based primarily on the publication of books and secondarily on the publication of articles in peer-reviewed journals.  Marcus, in explaining to the members of the department the reasoning behind the calculation of raises, indicated that about half of the professors in the department had a book published or about to be published around the time of his determination.  Though Wu published some articles, she does not dispute that she did not publish a book during the relevant period.  Moreover, the raise Wu received—1.5%—was equal to or greater than the raises received by ten out of eighteen assistant and associate professors within the department.  Thus, Wu's raise was comparable to those of her colleagues considering her productivity for the relevant period.

As the evidence fails to show that Marcus violated procedure in giving Wu a 1.5% pay increase, Wu insufficiently relies on temporal proximity alone.  *See Strong*, 482 F.3d at 808.  Accordingly, Wu has failed to establish a prima

facie case for retaliation as it relates to her merit-based pay increase, and the district court's grant of summary judgment was not error.  *See Nassar*, 133 S. Ct. at 2533.

### B.  *Exclusion of Expert Testimony*

Finally, Wu challenges the trial outcome only by arguing that the district court abused its discretion by excluding the testimony of her expert witness from the trial and by failing to have a *Daubert*[4] hearing before granting MSU's motion in limine to exclude the expert's testimony.

Wu proferred an expert report prepared by Dr. Thornton, an economics professor, that compared the salaries and scholarly output of the twelve associate professors at MSU's history department.  The report concluded that the history department's merit-pay compensation system was based on subjective and unequal evaluations that placed Wu among the lowest paid of her peers despite outperforming them in scholarly output.

The district court found that Dr. Thornton's report compared the salaries and scholarly output of associate professors in the history department without regard to when the scholarship was actually produced.  Dr. Thornton's report only considered cumulative research output when determining the department's most productive scholars, and did not list research output by year.  This led the district court to find that the report was irrelevant because the allegedly discriminatory pay increases occurred only from 2008–2013, while Dr. Thornton's report examined Wu's research output for her entire employment period.[5]  The district court did not abuse its discretion by

---

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

[5]  Wu also argues that the district court erred by failing to hold a *Daubert* hearing, but she does not argue that the record was inadequate to make the determination that the expert's testimony was irrelevant or that a hearing would have changed the district court's decision.  The district court thus did not abuse its discretion by failing to hold a *Daubert*

No. 14-60917

excluding Dr. Thornton's testimony.

AFFIRMED.

---

hearing.