# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 5, 2022

Lyle W. Cayce
Clerk

No. 22-60183

Shadreika Burnice,

*Plaintiff—Appellant*,

*versus*

CoreCivic of Tennessee, L.L.C.; Christopher Williams, *Individually*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:20-CV-245

Before Richman, *Chief Judge*, and Dennis and Ho, *Circuit Judges*.

Per Curiam:*

Shadreika Burnice was fired from her position as a correctional counselor at Tallahatchie County Correctional Facility. Burnice sought relief under Title VII and Mississippi state law alleging, *inter alia*, retaliation and tortious interference with employment. The district court awarded full summary judgment to the defendants.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60183

We AFFIRM.

## I.  Facts and Procedural History

In August 2018, Burnice began working as an at-will employee at Tallahatchie County Correctional Facility, which is operated by CoreCivic of Tennessee, L.L.C. According to Burnice, in late December or early 2019, Christopher Williams, Burnice's immediate supervisor, began to sexually harass her. The harassment would occur regularly and continually throughout Burnice's employment. Burnice testified that Williams offered to help her with bills, made repeated comments about Burnice's appearance, called her by the nickname "Double B" or "big booty," and asked her what kind of underwear she was wearing. Burnice says she would typically ignore Williams, and would sometimes confide in her friend Shalondra Dudley, who was the chief of security at Tallahatchie, about Williams's harassment. Williams denied these allegations, and Dudley denied ever hearing about them from Burnice.

Burnice's case, and the dispute at summary judgment, center on an episode involving a meeting with a detainee that ultimately led to Burnice's termination. The parties present differing accounts. In Burnice's telling, she reported Williams's sexual harassment and was immediately investigated for disciplinary infractions that she says were pretext for firing her in retaliation. In the defendants' version, Burnice threatened to assault a supervisor and only after CoreCivic began investigating this incident did management learn of Burnice's allegations against Williams. Each is recounted in more detail below.

According to Burnice, she reported Williams's sexual harassment to Kamala Grant, the assistant warden, on May 6, 2019. The next day, Grant, Williams, and Burnice met to discuss Burnice's allegations, but the meeting was cut short. Later that afternoon, Burnice brought a detainee to Williams'

office to discuss a disciplinary issue. Williams called the chief of unit management, Omaira Alvero, to help interpret on the detainee's behalf. At some point, another employee, Jessica Gross, joined the meeting. When Alvero relayed that the detainee thought Burnice was going to assault him, Burnice said "this is some bullshit" and left the office. After Burnice left, another employee, Annie Bonner, entered Williams's office. According to Burnice, Bonner was not present for the conversation between Burnice, the detainee, and Chief Alvero.

CoreCivic and Williams present a different version of events. Relying on declarations from Grant, Bonner, and Williams, the defendants aver that Burnice did not notify Grant of her allegations against Williams until May 8, 2019, the day after the episode in Williams's office and after Williams had reported to Grant that Burnice threatened violence against Chief Alvero during the meeting. More specifically, Burnice threatened that she would "slap the shit out of that bitch"—referring to Chief Alvero—whom Burnice felt had sided with the detainee after the detainee stated that he feared Burnice would assault him. According to Williams, Bonner was in his office at the time and heard Burnice's threat. Bonner separately confirmed this, and corroborated that Burnice threatened to slap Chief Alvero. Grant reported what Williams had told her to the warden, who in turn ordered Billy Baker, an independent investigator employed by CoreCivic, to investigate the matter.

Baker conducted an investigation into the report of Burnice's threat. He interviewed a number of people allegedly involved, including Burnice, Williams, Gross, Bonner, and Arvelo, and concluded that Burnice had called Arvelo a "bitch" and threatened to slap her. The report noted that Williams had asked Bonner to make a statement about Burnice's threat and "write it just as he was saying it," but that Bonner had "heard Burnice say the words" herself and did not like the way Williams asked her to write a statement.

No. 22-60183

Baker also conducted a separate investigation into Burnice's allegations of sexual harassment against Williams and concluded that there was no corroborating evidence to support the allegations. Citing Baker's report, CoreCivic terminated Burnice's employment less than a month later for violating its "Code of Ethics and Business Conduct."

Burnice filed a complaint in Hinds County Circuit Court alleging sex discrimination, sexual harassment, and retaliation in violation of Title VII and tortious interference with employment in violation of Mississippi state law. The defendants removed the case to federal district court and, after discovery, moved for summary judgment. Burnice agreed to the dismissal of her sexual harassment and sex discrimination claims but contended that her other claims should go to trial. The district court found that the summary judgment record contained no evidence that Williams had caused Burnice's termination, a necessary element of both Burnice's retaliation and tortious interference claims. Rather, the evidence showed that CoreCivic had terminated Burnice because of the policy violations identified in Baker's report. The district court granted summary judgment on those claims and entered a final judgment in favor of the defendants. Burnice timely appealed.

## II. Standard of Review

We review a district court's summary judgment ruling de novo, "applying the same standard as the district court in the first instance." *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016). "We interpret all facts and draw all reasonable inferences in favor of the nonmovant." *Id.* Summary judgment is appropriate only when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

No. 22-60183

### III.     Discussion

Title VII's anti-retaliation provision "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (citing 42 U.S.C. § 2000e-3). "Title VII retaliation claims must be proved according to traditional principles of but-for causation." *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), as revised (Aug. 14, 2020) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). To survive summary judgment, a plaintiff alleging retaliation in violation of Title VII "must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the adverse employment action but for the protected activity." *Id.* (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)). Similarly, in a tortious interference with employment claim, a plaintiff must prove that the employment contract would have been honored "but for" the alleged interference. *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 50 (Miss. 1998).

On appeal, Burnice advances two theories of causation in her challenge to the district court's ruling, both based on the record evidence that Williams had asked Bonner to write a statement reporting Burnice's threat and suggested that Bonner phrase it a certain way. First, Burnice argues that the investigator himself, Billy Baker, harbored retaliatory animus, therefore connecting the but-for cause of her firing with retaliation. As evidence of this animus, Burnice claims that Baker "intentionally manipulated his report" to both alter Bonner's statement to corroborate Williams's and to minimize Williams's attempts to influence his investigation. But there is no evidence in the record to even remotely suggest this. Bonner testified at her deposition

No. 22-60183

that she personally heard Burnice threaten to "slap the shit out of that bitch" referring to Chief Arvelo. Bonner denied that Williams ever asked her to lie or fabricate allegations against Burnice. Rather, as Bonner explained at her deposition, she had taken exception to Williams repeating what she had clearly overheard herself, suggesting that she did not "hav[e] the sense to say what I heard. I heard what I heard." Thus, the summary judgment record discloses no evidence that a reasonable factfinder could rely on to conclude that Baker himself retaliated against Burnice for reporting Williams's alleged harassment.[1]

Burnice's second challenge relies on the cat's paw theory of liability. Under this theory, a plaintiff can establish but-for causation even if the decisionmaker directly responsible for her firing did not harbor retaliatory animus, but was manipulated into taking an adverse employment action by another employee who did. *Brown*, 969 F.3d at 577. "A plaintiff proceeding under this theory must prove that (1) her supervisor, motivated by retaliatory animus, took action intended to cause an adverse employment action; and (2) that action was the but-for cause of her adverse employment action." *Id.* (citing *Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015)). Burnice claims that Williams caused Bonner to falsify her statement that she heard Burnice threaten Arvelo. As discussed above, the summary judgment record

---

[1] Burnice presents this argument alone as a sufficient basis to vacate summary judgment. But Burnice was not fired by Baker. The decision to terminate Burnice, while based on the findings by Baker, was made by someone else employed by CoreCivic about which there is no evidence of motive. The proper theory in which to state this claim, as explained *infra*, would be a cat's paw theory to establish liability by showing that Baker harbored retaliatory animus and caused a neutral decisionmaker at CoreCivic to fire Burnice. The summary judgment record at least contains a genuine dispute as to whether Baker's report was the but-for cause of Burnice's firing. But because Burnice fails to show a genuine dispute as to whether Baker harbored retaliatory animus, we reject her argument that summary judgment should be vacated even under a cat's paw theory.

No. 22-60183

does not support this contention. The record shows that Williams, whatever his motivation or purpose in repeating Burnice's words to Bonner, did not influence Bonner's statement. Moreover, Baker's report acknowledged Williams's interaction with Bonner and her discomfort. Baker concluded nonetheless that the evidence he had gathered showed that Burnice had threatened Arvelo. *See id.* at 580 (affirming summary judgment despite evidence of supervisor's attempts to influence witness statements because the "attempts were unsuccessful"). Burnice's argument that Williams manipulated Baker's report to create cause for her firing fails in light of the record.

\*        \*        \*

Summary judgment on Burnice's Title VII retaliation claim was proper as the record does not contain any genuine factual dispute as to but-for cause for Burnice's termination. For the same reason, summary judgment on Burnice's tortious interference claim was also proper. The judgment of the district court is AFFIRMED.