# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-11096

United States Court of Appeals
Fifth Circuit

**FILED**
October 16, 2018

Lyle W. Cayce
Clerk

DETRA PERKINS,

Plaintiff–Appellant,

v.

CHILD CARE ASSOCIATES,

Defendant–Appellee.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:16-CV-694

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Detra Perkins's employment as a teacher at Child Care Associates (CCA) was terminated after she was alleged to have used inappropriate language in front of children, shaken a child, and encouraged children to fight one another. Perkins brought suit against CCA alleging interference with her rights under the Family and Medical Leave Act[1] (FMLA); retaliation under the FMLA; retaliation for reporting abuse by a supervisor in violation of the Texas Family

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-2654.

No. 17-11096

Code; and improper termination on the basis of disabilities under the Rehabilitation Act of 1973. The district court granted summary judgment in favor of CCA. We affirm.

## I

CCA is a non-profit entity that provides childcare and child learning programs for low-income families. Detra Perkins began working full-time at CCA's Ellis Child Developmental Center as an assistant teacher in August 2007. About a year later, CCA promoted Perkins to the position of teacher. In that capacity, Perkins was responsible for supervising young children and leading them in developmental activities.

On June 26, 2014, Gloria Serrano, CCA's "Head Start Director," received a report from Zayko Ramirez, one of Perkins's co-workers, that Perkins grabbed and shook a child, spanked another child, said "bad things (stupid[])" in front of children, said "get him girl" as co-worker Sheila McNeal hit a child with a spoon, and encouraged children to fight one another. CCA immediately reported the allegations to the Child Care Licensing Division of the Texas Department of Family and Protective Services (TDFPS).

That evening, Vachelle Johnson, director of the Ellis Center, told Perkins she was suspended and asked her to write an email explaining how she disciplined children. Johnson would not tell Perkins why she had been suspended. The next morning, June 27, Perkins emailed Johnson stating that she never disciplined children by hitting them. Shortly thereafter, Johnson emailed Serrano to say that she had never witnessed nor been told about employees harming children, but that she was "made aware of this type of unacceptable behavior" the day before.

That same morning, Laura Elizondo of TDFPS went to the Ellis Center to investigate. Elizondo reportedly told Johnson that an adverse finding was

No. 17-11096

likely.   Johnson informed CCA's regional director, Penny McClelland, of Elizondo's comment, and McClelland shared this information with Serrano.

Perkins met Serrano at CCA's corporate office that afternoon.  When Perkins arrived, Serrano immediately gave Perkins a termination notice.  The notice contained a checklist of potential reasons that an employee might be fired.  Serrano had checked boxes for "Improper Conduct with Customer," "Sub-standard work performance," "Violation of Company Policy," "Failure to Follow Instruction," and "Improper Conduct with Co-Worker."  She did not check the boxes corresponding to "Absenteeism/Tardiness" or "Misuse/Abuse of Company Property."  The notes section of the form stated: "Information provided to [CCA] in statements given to us provides that children in your care were harmed.  This violates Texas State Minimum, and those policies of Child Care Associates."  When Perkins asked for an explanation, Serrano refused to elaborate and did not ask Perkins to relate what had transpired.  In her declaration in this lawsuit, Perkins denies all of Ramirez's allegations.

Perkins alleges that she was fired for using FMLA leave, which she had taken on several occasions.  In August 2011, Perkins took a week of FMLA leave because she was having migraines.  She requested leave by submitting paperwork to CCA human resources and received approval in the mail.  Several months later, Perkins requested and received FMLA leave for the period between October 19 and November 22, 2011, for a lower-back injury.

Perkins was diagnosed with breast cancer in the summer of 2012 and sought FMLA leave for a double mastectomy shortly thereafter.  A vice president at CCA asked Perkins to postpone the procedure, but Perkins said she could not do so and underwent surgery before she knew whether CCA would approve her request.  CCA ultimately gave approval, again by mail, and Perkins took FMLA leave from August 7 to September 10, 2012.

3

No. 17-11096

Perkins bases her FMLA claims in part on comments allegedly made by her supervisors about her use of leave. Perkins alleges that in early 2013, her then-supervisor, Ms. Barnaby, said Perkins could be fired if she missed more work, even for chemotherapy. Perkins reported this conversation to CCA human resources (HR), and the representative told her not to worry. Barnaby was instructed by her supervisor that she should not have made the statement to Perkins. Barnaby later apologized, and CCA soon transferred Barnaby to another location. After that incident, Perkins requested and was "approv[ed] for intermittent FMLA leave" sometime in February or March 2013. Perkins then took FMLA leave from March 21 to May 1, 2013 for reconstructive surgery, which CCA approved.

When Johnson became director of the Ellis Center in July 2013, Perkins explained to Johnson that she was a breast cancer survivor and that she used intermittent FMLA leave for treatments. Perkins also told Johnson that she intended to use FMLA in the future for breast reconstruction, though she did not request FMLA leave at that time.

From September 19 to October 28, 2013, Perkins again took approved FMLA leave, this time for a shoulder injury sustained in a car accident that occurred while she was en route to a meeting at CCA's corporate offices. Perkins attempted to return to work earlier, with restrictions, but CCA did not allow her to return until she could work without restrictions. There is no dispute that after each FMLA leave of absence, Perkins returned to her normal job responsibilities as a teacher.

Perkins was absent from work intermittently between March and June 2014. The record does not reflect whether these absences were FMLA leave. After one absence, Johnson purportedly "wrote . . . up" Perkins for being a "no call/no show." Perkins explained that she did call CCA, but Johnson said that her new policy was that employees must call her directly to report absences.

4

No. 17-11096

Johnson allegedly said that Perkins and Perkins's assistant were absent too often and that if they did not want to work she could find someone who did.

Perkins also claims that she was fired for reporting that another teacher had mistreated a child. On May 23, 2014, Perkins heard a commotion in Sheila McNeal's classroom. McNeal said she saw assistant director Virginia Prieto swing a five-year-old with special needs into the cubicles. Perkins later asked Johnson if McNeal had reported the incident to the child's mother. When Johnson said she was conducting an investigation and told Perkins that the matter was not her concern, Perkins replied that if Johnson did not tell the child's mother, she would do so herself. Following this exchange, there was a tense staff meeting in which relations between Hispanic and non-Hispanic workers deteriorated. News of the tension reached CCA's corporate office.

Perkins sued CCA in state court and CCA promptly removed to federal court. The district court remanded some of Perkins's claims to state court. After repleading, Perkins brought four claims: (1) retaliation for using FMLA leave; (2) interference with use of FMLA leave; (3) retaliation for reporting abuse in violation of Texas Family Code § 261.110; and (4) violation of the Rehabilitation Act. CCA moved for summary judgment on all claims, and the district court granted that motion. Perkins appeals.

## II

This court reviews a district court's grant of summary judgment *de novo*,[2] drawing all reasonable inferences in favor of the non-moving party.[3] Summary judgment is required "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

---

[2] *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016).

[3] *Ion v. Chevron USA, Inc.*, 731 F.3d 379, 389 (5th Cir. 2013) (citing *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 387 (5th Cir. 2007)).

No. 17-11096

matter of law."[4]  A fact is "genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."[5]  This court typically "will not consider evidence or arguments that were not presented to the district court for its consideration in ruling on the motion."[6]

### III

Perkins argues that there are genuine disputes of material fact as to each of her four claims.  First, Perkins argues that a reasonable jury could find that she was terminated in retaliation for her use of FMLA leave.  The Family Medical Leave Act protects employees who need to take leave to address health and medical issues.  In any twelve-month period, an employee is entitled to twelve weeks of leave due to, among other things, "a serious health condition that makes the employee unable to perform the functions" of the employee's job.[7]

Employers may not retaliate against employees who use FMLA leave.[8] To succeed on a claim for FMLA retaliation, an employee must show that "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) . . . the adverse decision was made because he sought protection under the FMLA."[9]  This showing requires a "'causal link' between the FMLA-protected activity and the adverse action."[10]  To establish a causal link, the employee must show that the decisionmaker knew that the employee

---

[4] Fed. R. Civ. P. 56(a).

[5] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

[6] *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir. 1992)).

[7] 29 U.S.C. § 2612(a)(1)(D).

[8] *Id.* § 2615(a).

[9] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 790 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006)).

[10] *Id.* at 790 (quoting *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005)).

engaged in the protected activity[11] and the decisionmaker had a retaliatory motive or was influenced by someone who had such a motive.[12]

"Retaliation claims under both Title VII and the FMLA . . . are analyzed under the *McDonnell Douglas* burden-shifting framework."[13]  For that reason, this court often cites to cases analyzing claims made under these and other statutes to which the *McDonnell Douglas* framework is applied interchangeably.  If the employee establishes a prima facie case, the burden shifts to the employer to prove that the adverse employment action was not motivated by the employee's use of FMLA leave.[14]  If the employer provides a permissible rationale, the burden then shifts back to the employee to show either that the employer's rationale is merely pretext, or the employer's reason—although true—is but one of the reasons for its conduct, another of which was discrimination.[15]

## A

The parties do not dispute that Perkins used FMLA leave at various times during her employment with CCA and that Perkins suffered an adverse employment action when she was terminated.  The only issue regarding the prima facie case is causation.

Evaluating causation in retaliation cases is a "highly fact specific" inquiry.[16]  This court has considered several factors, including temporal

---

[11] *EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (Title VII).

[12] *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017) (citing *Staub v. Proctor Hospital*, 562 U.S. 411, 419 (2011)) (Title VII).

[13] *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).

[14] *Id.* at 705-06.

[15] *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332-33 (5th Cir. 2005) (Title VII); *see also Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006).

[16] *Nowlin v. Resolution Tr. Corp.*, 33 F.3d 498, 508 (5th Cir. 1994) (Title VII); *Schroeder v. Greater New Orleans Fed. Credit Union*, 664 F.3d 1016, 1024 (5th Cir. 2011) (Federal Credit Union Act).

proximity between the FMLA leave and the adverse employment action,[17] the employee's past disciplinary record, and whether the employer followed its usual procedures in carrying out the adverse employment action.[18]   If an employee relies only on temporal proximity to show causation, the timing must be "very close."[19]  This court has held that a period of five months between the protected activity and the adverse action is too long.[20]  Moreover, plaintiffs "cannot, with each protected activity, re-start 'the temporal-proximity clock'" by alleging that an employer "repeatedly engaged in protected activity" over a period of time.[21]

The district court held that Perkins did not show causation and suggested that she had not shown that Serrano knew Perkins had used FMLA leave.  The record reflects that Serrano received emails indicating that Perkins was on leave in October 2013.  In her motion opposing summary judgment, Perkins mentioned these emails but did not cite where they could be found in the record.  The district court "searched the summary judgment record on its own accord, [but was] unable to find evidence" of the email updates.  The emails show that Perkins requested to return to work wearing a sling after she was injured in the car accident in October 2013.  Serrano recommended that CCA not accommodate Perkins's request to return to work wearing a sling.  Viewed in the light most favorable to Perkins, these emails show that Serrano was aware that Perkins took FMLA leave eight months before she was terminated.

---

[17] *Mauder v. Metro. Transit Auth. of Harris Cty.*, 446 F.3d 574, 583 (5th Cir. 2006) (citation omitted) (stating that the court "shall consider the 'temporal proximity' between the FMLA leave, and the termination.").

[18] *Nowlin*, 33 F.3d at 508; *see also Schroeder*, 664 F.3d at 1024.

[19] *Feist v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013) (quoting *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 273-74 (2001)) (Title VII and ADA).

[20] *Raggs v. Miss. Power & Light Co.,* 278 F.3d 463, 472 (5th Cir. 2002) (Title VII).

[21] *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n.23 (5th Cir. 2017) (citations omitted) (Title VII).

No. 17-11096

The district court correctly concluded that this eight-month gap was too long to show causation on its own, regardless of Serrano's knowledge of the leave.

Perkins did not clearly indicate to the district court or to this court when she last used FMLA leave. In her brief opposing summary judgment, Perkins argued that she used FMLA leave two months prior to her termination. Perkins argued before this court that she was absent under FMLA leave just eight days before she was terminated on June 27, 2014. Perkins did not cite any competent evidence to support this contention, nor did she point this court to other evidence in the record to show that she used FMLA leave at any time in 2014. The record does indicate that she was "approv[ed] for intermittent FMLA leave" sometime in February or March 2013. Perkins then took FMLA leave from March 21 to May 1, 2013. Construing the evidence in the light most favorable to the nonmovant, Perkins, a reasonable jury could perhaps conclude that she took FMLA leave as late as June 19, 2014, under her approved intermittent leave from 2013. However, Perkins has failed to demonstrate that Serrano was aware of such leave. Ultimately, the exact timing of the latest FMLA leave is irrelevant because Perkins failed to show that Serrano knew of such leave or otherwise acted based on a retaliatory animus. Instead, the record reflects that Serrano terminated Perkins in response to allegations of misconduct.

## B

On appeal, Perkins also argues that Johnson did not like that she used FMLA leave and that Johnson's knowledge and animus is attributable to Serrano under a cat's paw theory. "Plaintiffs use a cat's paw theory of liability when they cannot show that the decisionmaker—the person who took the adverse employment action—harbored any retaliatory animus."[22] To use cat's

---

[22] *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015) (Title VII).

paw analysis to prove but-for causation, a plaintiff must show that (1) someone "motivated by retaliatory animus, took acts intended to cause an adverse employment action" and (2) those acts so influenced the decisionmaker's decision that they were a but-for cause of the adverse employment action.[23]

A reasonable jury could conclude that Johnson harbored such animus. Perkins stated in her declaration that after she returned from intermittent leave in spring 2014, Johnson told her she was missing too much work. Johnson allegedly told Perkins she could find someone who wanted to work if Perkins did not want to work. A reasonable factfinder could interpret Johnson's remarks as evidence of animus toward Perkins for her use of FMLA leave. However, it does not appear that Johnson took action calculated to result in Perkins's termination.

Perkins's sole theory as to how Johnson influenced Serrano is that Johnson told McClelland that Elizondo, the TDFPS investigator, said a citation from TDFPS was likely, and then McClelland relayed this information to Serrano. Perkins does not contend that Johnson intended her report to reach Serrano or to result in Perkins's termination. There is no evidence that Johnson made any negative comments about Perkins to Serrano or anyone else. The mere fact that Johnson, the director of the center under investigation, told her superior about the investigator's comments is not sufficient to raise a fact question as to whether Johnson's action was calculated to cause an adverse employment decision.

## C

Johnson's alleged statements about the impending citation also do not raise a fact question about the but-for cause of Perkins's termination. This

---

[23] *Id.* at 333.

court has stated that "an investigation that result[s] in an adverse action for reasons unrelated to the . . . [supervisors'] retaliatory statements could be a superseding cause, breaking the causal chain."[24]  To break the causal chain, such an investigation must show that adverse action is justified without relying on the supervisor's biased recommendations.[25]  Johnson's report cannot readily be viewed as a "biased recommendation."  But assuming it was, Perkins would need to show that Serrano would not have terminated her if Johnson had not told McClelland about Elizondo's comment to establish but-for causation.[26]  On the one hand, Johnson's report likely reached Serrano before Serrano fired Perkins, so the report could have influenced Serrano's decision. But Perkins does not argue that Serrano fired Perkins because of the possibility of a citation.  CCA, for its part, argues that Serrano relied only on the allegations against Perkins in making her decision, and it is undisputed that Serrano learned of the allegations from Ramirez, not Johnson.  Because Perkins does not contend that Serrano's decision to fire her was even partially based on the possibility of a citation, she cannot show a causal link between Johnson's report and her termination. Her cat's paw analysis fails.

## IV

Perkins argues that a reasonable jury could find she was fired to interfere with her use of FMLA leave in the future.  Interference claims require the employee to show that the employer "interfered with, restrained, or denied [his] exercise or attempt to exercise FMLA rights, and that the violation

---

[24] *Fisher v. Lufkin Indus., Inc.*, 847 F.3d 752, 758 (5th Cir. 2017) (internal quotation marks omitted) (second alteration in original) (quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 421 (2011)).

[25] *Id.*

[26] *Zamora*, 798 F.3d at 333.

11

prejudiced [him]."[27]   Our sister circuits have recognized that employees can show that an employer interfered with their attempts to use FMLA leave by firing them.[28]   Accepting for the sake of argument that terminating an employee can support an interference claim, the employee must also show that she gave her employer notice of her "intention to take leave."[29]   Absent unusual circumstances, the employee must follow "the employer's usual and customary notice and procedural requirements for requesting leave."[30]

On appeal, Perkins argues only that because she told Johnson in July 2013 that she expected to take leave at some future period for breast reconstruction surgery, she had notified CCA that she would be using leave. CCA's motion for summary judgment stated that Perkins "knew how to request FMLA leave and had not done so."   In her brief before this court, Perkins argued for the first time that CCA had no consistent policy for requesting leave, so she cannot be responsible for failing to follow a particular practice.   Perkins forfeited this argument by failing to raise it before the district court.[31]   In any case, the record belies Perkins's argument.   When Perkins had previously submitted requests for FMLA leave, she contacted HR and received confirmation via mail that CCA had approved the leave.   Even though CCA has not produced an official policy for requesting leave, Perkins provided no notice at all.   Perkins did not specify a time for the future leave and took one-month of FMLA for unrelated reasons approximately three months after her July 2013 comment to Johnson.   Whatever CCA's customary and usual

---

[27] *Acker v. Gen. Motors, L.L.C.*, 853 F.3d 784, 788 (5th Cir. 2017) (alterations in original) (quoting *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 770 (5th Cir. 2015)).

[28] *See, e.g.*, *Erdman v. Nationwide Ins. Co.,* 582 F.3d 500, 509 (3d Cir. 2009).

[29] *See* 29 U.S.C. § 2612(e)(1); 29 C.F.R. § 825.303.

[30] *Acker*, 853 F.3d at 788 (quoting 29 C.F.R. § 825.302(d)).

[31] *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 n.15 (5th Cir. 2008).

practice for providing notice, Perkins did not follow it by casually suggesting that she would take leave at some point in the future.

## V

Perkins argues that a reasonable jury could find that CCA violated Texas law when she was fired because she reported child abuse. Section 261.110 of the Texas Family Code prohibits employers from "suspend[ing] or terminat[ing] the employment of, or otherwise discriminat[ing] against, a person who is a professional and who in good faith . . . reports child abuse or neglect to . . . the person's supervisor" or various other actors.[32] If the employee is fired within sixty days of reporting the abuse, there is a rebuttable presumption of retaliation.[33] The employer is not liable if it shows that it would have terminated the employee even if the employee had not reported child abuse.[34]

The parties agree that the rebuttable presumption applies in this case because CCA terminated Perkins less than sixty days after she reported the alleged abuse to Johnson. But CCA successfully rebuts this presumption, and Perkins's evidence is not sufficient to create a factual dispute. CCA cited to Serrano's declaration, wherein she stated that she did not know that Perkins had reported child abuse to Johnson. Perkins did not introduce any evidence to rebut Serrano's declaration in her motion opposing summary judgment. Perkins admits that she has no direct evidence that Serrano knew about the report. The only circumstantial evidence about Serrano's knowledge that Perkins discusses on appeal is that after Johnson reported the alleged abuse, there was a tense staff meeting in which racial relations between Hispanic and

---

[32] Tex. Fam. Code Ann. § 261.110(b).

[33] *Id.* § 261.110(i).

[34] *Id.* § 261.110(k).

non-Hispanic workers "blew up" and that news of the tension had reached CCA's corporate office.  Perkins did not raise this argument before the district court.[35]  In any event, Perkins does not allege that information about the meeting reached Serrano.  Defeating a motion for summary judgment requires more than speculation.[36] CCA also had an independent basis for terminating Perkins—the serious allegations of misconduct.

## VI

Finally, Perkins argues that a reasonable jury could find that CCA violated the Rehabilitation Act by discriminating against her because of her disabilities.  The Rehabilitation Act prohibits discrimination against individuals with disabilities by entities that receive federal funds.[37]  The Rehabilitation Act and the Americans with Disabilities Act (ADA) have the same standards and provide the same remedies; case law interpreting either statute applies to both.[38]  To establish discrimination under the Rehabilitation Act, an employee must show that "(1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him because of his disability."[39]  The parties dispute only the first and third elements.

Perkins claims that she is disabled within the meaning of the ADA because she has cancer and an injured rotator cuff.  The district court assumed

---

[35] *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) ("[A]rguments not raised before the district court are waived and cannot be raised for the first time on appeal.").

[36] *See EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017).

[37] *See* 29 U.S.C. § 794(a).

[38] *Kemp v. Holder*, 610 F.3d 231, 234-35 (5th Cir. 2010) (citing *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574 (5th Cir. 2002)).

[39] *Id.* at 235 (citing *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999)).

without deciding that she was disabled.  Assuming Perkins is disabled, she has failed to show that CCA terminated her employment because of a disability.

To successfully bring a discrimination claim under the Rehabilitation Act, an employee must show that her employer terminated her because of her disability.[40]  This court applies a "motivating factor" test, "which provides that 'discrimination need not be the sole reason for the adverse employment decision . . . [so long as it] actually play[s] a role in the employer's decision making process and ha[s] a determinative influence on the outcome.'"[41] As with retaliation claims, a burden-shifting framework applies to the Rehabilitation Act claims when the plaintiff offers only circumstantial evidence.[42]  The employee must produce evidence to prove a prima facie case of disability discrimination, after which the burden shifts to the employer to provide a non-discriminatory reason for firing the employee.[43]  If the employer succeeds, the employee must show that the employer's rationale is pretextual.[44]

In her complaint and briefing before the district court, Perkins never argued that Serrano knew that she had cancer and a rotator cuff injury.  She also does not argue that Serrano considered those impairments in making a decision regarding termination.  Because Perkins failed to respond to CCA's argument that Perkins had no evidence that Serrano knew of or based her decision on Perkins's impairments, the district court treated that fact as undisputed.  There is some record evidence that suggests Serrano knew about both the cancer and the rotator cuff injury.  On appeal, Perkins cites to

---

[40] 42 U.S.C. § 12112(a).

[41] *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479-80 (5th Cir. 2016) (alterations in original) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 702 (5th Cir. 2014)).

[42] *Id.* at 479.

[43] *Id.*

[44] *Id.*; *see also LHC Grp.*, 773 F.3d at 702.

No. 17-11096

Serrano's deposition from McNeal's lawsuit, wherein Serrano said she knew Perkins had cancer. However, by failing to dispute the fact before the district court with specific citations, Perkins forfeited the argument and the district court properly treated the facts as undisputed.[45]

Even assuming that Serrano was aware of Perkins's disabilities, Perkins does not provide any evidence that suggests Serrano's decision was fully or partially motivated by discrimination. All that her evidence shows is that (1) she had cancer and a rotator cuff injury and (2) she was terminated—she does not provide evidence to connect the dots. No CCA employee made comments about Perkins's cancer that could be perceived as discriminatory, and Perkins was terminated approximately fourteen months after her most recent cancer-related procedure and eight months after she returned to work from her rotator-cuff injury "without restrictions." Perkins has not made a prima facie case of discrimination under the Rehabilitation Act.

Further, CCA provided a non-discriminatory reason for terminating Perkins: that it was responding swiftly to allegations that Perkins had mistreated children in her care. As evidence of pretext, Perkins references the same arguments she used for her FMLA retaliation claim—that she did not have a significant history of discipline and that based on terminations of which she was aware, CCA usually waited for the results of an investigation before it fired employees accused of abuse. Without evidence of discriminatory animus, however, these facts are not "substantial evidence" that CCA's rationale was pretext.[46]

---

[45] *See* Fed. R. Civ. P. 56(c),(e); *Grogan v. Kumar*, 873 F.3d 273, 277 (5th Cir. 2017).

[46] *See Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

No. 17-11096

\* \* \*

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of CCA.